GASKINS, J.
| derrick Young, Sr., is a deputy with the Madison Parish Sheriffs Department. He was injured while responding to a 911 call when his patrol car was struck by a fire truck driven by Johnny Marsh, a firefighter with the City of Tallulah and a volunteer firefighter with the Madison Parish Police Jury (“MPPJ”). Mr. Young and his wife, LaWanda Young, and their children, Demeante, Derrick, Jr., Dorian, and Derrilon, filed suit against Mr. Marsh, the City of Tallulah Fire Department, the City of Tallulah, the MPPJ, and St. Paul Fire & Marine Insurance Company. The MPPJ filed a motion for summary judgment which was granted by the trial court, dismissing the plaintiffs’ claims against that entity. The plaintiffs have appealed. For the following reasons, we affirm the trial court judgment.
FACTS
On June 17, 2007, at 6:54 a.m., Mr. Young was responding to an emergency call regarding a car overturned on Interstate 20. Mr. Marsh, driving a City of Tallulah fire truck, was also responding to the call. Mr. Marsh was employed by the City of Tallulah Fire Department, and also answered calls as a volunteer firefighter with the MPPJ.
As they approached an intersection, Mr. Young alleges that he had a green light and that Mr. Marsh ran a red light, struck his patrol vehicle, and the patrol car then hit a utility pole. Mr. Young claims that Mr. Marsh had a suspended driver’s license due to failure to maintain insurance. The accident occurred in Madison Parish, outside the Tallulah city limits.
Mr. Young suffered injuries to his head, neck, arms, back, and legs. He filed suit along with his wife and children against the defendants. He |2claims damages for past, present, and future pain and suffering; physical disability; loss of enjoyment of life; lost earnings; loss of earning capacity; loss of future earnings; past, present, and future medical expenses; emotional distress; attorney fees, interest, and costs; and expert witness fees. LaWanda claims damages for loss of consortium and the couple’s four children seek damages for mental anguish.
The plaintiffs allege that the MPPJ hired Mr. Marsh to act as a volunteer firefighter and that he was acting in the course and scope of his employment with the MPPJ at the time of the accident. The plaintiffs claim that Mr. Marsh was paid for every run, and that the MPPJ had the right to control his salary, rate of compensation, and the number of calls he received in Madison Parish. The plaintiffs maintain that the MPPJ had the right to discipline or terminate Mr. Marsh, and that the MPPJ negligently hired and contracted with the City of Tallulah and with Mr. Marsh. The plaintiffs urge that the *44 MPPJ failed to exercise reasonable diligence in investigating to determine whether Mr. Marsh was a licensed driver and had liability insurance. The plaintiffs claim that the MPPJ should be held liable or vicariously liable for the actions of Mr. Marsh and/or the City of Tallulah and/or the City of Tallulah Fire Department.
On September 20, 2010, the MPPJ filed a motion for summary judgment claiming that under La. R.S. 42:1441.3, Mr. Marsh was not an employee of the MPPJ.[1]
|4A hearing was held on April 13, 2011, on the plaintiffs’ motion to compel discovery and the MPPJ’s motion for summary judgment. Regarding the motion to compel, the plaintiffs claimed that the MPPJ was attempting to conceal payments to volunteer firefighters during the time when this accident occurred. The plaintiffs requested bank records to verify when volunteers were paid by the police jury. The police jury objected to producing records for anyone other than Mr. Marsh. The plaintiffs also claimed that some records regarding volunteer firefighter pay were in a different format from those previously produced. The trial court found that the additional discovery sought by the plaintiffs was not relevant or necessary in order for the court to rule on the motion *45 for summary judgment. The motion to compel was denied.
Regarding the motion for summary judgment, the MPPJ argued that Mr. Marsh was not its employee under the factors listed in La. R.S. 42:1441.3(C). The MPPJ claimed that it did not have the power of selection or engagement over Mr. Marsh because he was employed by the City of Tallulah. The police jury argued that it did not supervise Mr. Marsh or have the right of control over him; it maintained that the police jury did not set Mr. Marsh’s work schedule. The MPPJ contended that it did not have the right to discipline or terminate Mr. Marsh and that he did not receive any compensation for this fire run.
The plaintiffs argued that the MPPJ paid $25,000 to $30,000 to the City of Tal-lulah for the use of the City’s fire equipment. The plaintiffs | fiurged that the MPPJ selected the number of volunteer firefighters and decided how much to pay them for each emergency run.
The trial court reasoned that the issue to be decided was whether the MPPJ or the City of Tallulah was to be considered the master of Mr. Marsh under La. R.S. 42:1441.3. The trial court determined that the MPPJ had no power of selection or engagement of Mr. Marsh and had no control of his daily time, physical activities, and no power of discipline. The trial court concluded that, under La. R.S. 42:1441.3(F), only one political subdivision can be vicariously liable for the torts of an employee. The trial court determined that the City of Tallulah was the master of Mr. Marsh, not the MPPJ. Therefore, the trial court granted summary judgment in favor of the MPPJ, dismissing the plaintiffs’ claims. A judgment to that effect was signed April 13, 2011. The plaintiffs appealed.
VICARIOUS LIABILITY
In their first three assignments of error, the plaintiffs essentially argue that the trial court erred in finding that the MPPJ was not vicariously liable for Mr. Marsh’s actions which resulted in injury to Mr. Young, when Mr. Marsh was responding to an emergency call outside the city limits of Tallulah and before his shift began for the City of Tallulah Fire Department. The plaintiffs contend that the trial court erred in finding that under La. R.S. 42:1441.3(F), the MPPJ is immune from vicarious liability when one of its volunteer firefighters negligently injures another when responding to a fire simply because that volunteer happens to be employed by another political subdivision.
lr,The plaintiffs contend that the trial court erred in finding that the MPPJ lacked the requisite control over Mr. Marsh to be held vicariously liable for his negligent acts when the police jury paid him for his services as a volunteer firefighter, the police jury designated the amount of compensation to pay the volunteer firefighters, the police jury designated the number of volunteer firefighters that can receive compensation for responding to emergency calls from Madison Parish, the police jury paid for equipment to be used by volunteers, the police jury wrote checks to the individual volunteers for their services each month, and Mr. Marsh was responding to an emergency call outside the city limits of Tallulah and before his shift began for the City of Tallulah Fire Department. The plaintiffs further urge that, at a minimum, genuine issues of material fact exist concerning the police jury’s control over Mr. Marsh such that the lower court should not have granted summary judgment. These arguments are without merit.
*46 Legal Principles
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Palmer v. Martinez, 45,318 (La.App.2d Cir.7/21/10), 42 So.3d 1147, writs denied, 2010-1952, 2010-1953, 2010-1955 (La.11/5/10), 50 So.3d 804, 805. A motion for summary judgment is a procedural device used when there is no genuine issue of material fact. In re Clement, 45,454 (La.App.2d Cir.8/11/10), 46 So.3d 804. The summary judgment procedure is designed to secure the just, speedy and | ^expensive determination of every action allowed by law. La. C.C.P. art. 966(A)(2). A motion for summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B); Palmer v. Martinez, supra.
The moving party bears the burden of proof. However, when he will not bear the burden of proof at trial on the matter before the court on summary judgment, the movant is not required to negate all essential elements of the adverse party’s claim; he need only point out an absence of factual support for one or more essential elements of the adverse party’s claim. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and summary judgment is appropriate. La. C.C.P. art. 966(C)(2); Russell v. Eye Associates of Northeast Louisiana, 46,525 (La.App. 2 Cir. 9/21/11), 74 So.3d 230.
Discussion
La. C.C. art. 2320 provides in pertinent part:
Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
[[Image here]]
In the above cases, responsibility only attaches, when the masters or employers, ... might have prevented the act which caused the damage, and have not done it.
The master is answerable for the offenses and quasi-offenses committed by his servants, according to the rules which are ^explained under the title: Of quasi-contracts, and of offenses and quasi-offenses.
As set forth above, La. R.S. 42:1441.3(0 outlines the factors for determining which political subdivision may be made liable as master for the offenses and quasi offenses of a public employee of a political subdivision under Civil Code Article 2320 and other laws imposing such master-servant liability. These determinants for finding an employer-employee relationship include all of the following: (1) the public officer or governmental body politic that exercises the power of selection and engagement of the public employee; (2) the public officer or governmental body politic that supervises or has the right to control closely the daily time and physical activities of such public employee in carrying out his public duties; (3) the public officer or governmental body politic that exercises the power of disciplinary actions and dismissal of the public employee; and (4) the source of the funds used for the payment of salaries or wages of the public employee. In support of its motion for summary judgment, the MPPJ submitted the plaintiffs’ petition for damages, the affidavit of Margarett *47 Dew, the secretary-treasurer of the MPPJ, and excerpts of the depositions of Mr. Marsh and of Eddie Beckwith, Jr., the mayor of the City of Tallulah.
In Ms. Dew’s affidavit, she stated that she is employed by the MPPJ and is responsible for all administrative and personnel activities and functions of the MPPJ. She explained that Mr. Marsh is not an employee of the MPPJ, but that he was an employee of the City of Tallulah. She said that the MPPJ had no control or right of control over Mr. Marsh; the MPPJ Ifldid not select Mr. Marsh from a pool of applicants or choose to engage his services; the MPPJ did not supervise the daily time and physical activities of Mr. Marsh; Mr. Marsh does not report to the MPPJ; the MPPJ does not provide any instruction to Mr. Marsh regarding when, where, or how to perform; and the MPPJ does not set hours for Mr. Marsh. She claimed that the MPPJ did not have the authority to dismiss, terminate, or issue disciplinary actions for Mr. Marsh or any of the employees of the City of Tallulah. According to Ms. Dew, the MPPJ did not train Mr. Marsh or provide him with any tools, materials, or equipment, and did not pay Mr. Marsh’s salary. She testified that Mr. Marsh received a $10 stipend for response to fires outside the Tallulah city limits. The MPPJ distributes money received from the state to the various fire districts in the parish. Ms. Dew said that the MPPJ did not report wages to the Internal Revenue Service for Mr. Marsh, did not withhold federal, state, or FICA tax for him, and did not issue a W-2 form for him. Ms. Dew asserted that the MPPJ did not own the fire engine involved in this accident. She claimed that the fire engine was owned by the City of Tallulah.
In the deposition given by Mr. Marsh on July 15, 2008, he testified that he is a salaried, full-time employee of the City of Tallulah Fire Department. He maintained that the MPPJ provides funding to the City of Tallulah Fire Department and that the MPPJ president would know whether the MPPJ supplied any funding to the City of Tallulah Fire Department.
Eddie Beckwith, Jr. stated that the City of Tallulah receives funds from the MPPJ for responding to fires in the entire parish. He said that |inMadison Parish furnishes $25,000 to $26,000 received from the State of Louisiana to compensate the City of Tallulah for the use of its equipment.
Based upon the affidavit and depositions, the MPPJ argued that it did not employ Mr. Marsh, had no right of control over him, and any funds paid by the MPPJ to the City of Tallulah Fire Department or the stipend of $10 per run paid to volunteer firefighters did not establish a relationship for imposing liability on the MPPJ.
In its opposition to the motion for summary judgment, the plaintiffs argued that under the factors of La. R.S. 42:1441.8, the MPPJ was the master of Mr. Marsh and was responsible for his actions at the time of this accident. In support of its position, the plaintiffs pointed to the excerpts from the depositions of Mr. Young, a plaintiff in this matter; Thomas J. Williams, the former president of the MPPJ; Mr. Beck-with; James Griffin, the president of the MPPJ; Mr. Marsh; and Raymond Doyle, who is employed as a firefighter with the City of Tallulah and is also a volunteer firefighter for the MPPJ. Mr. Young stated that he got the call to respond to the emergency on Interstate 20 at 6:40 a.m. Mr. Marsh, whose work shift with the City of Tallulah was from 7:00 a.m. to 7:00 p.m., said in his deposition that, on the morning of the accident, he had already arrived at work when he received the call.
In his deposition, Mr. Williams said that the City of Tallulah provided firefighting *48 services for Madison Parish. The MPPJ gave state money received for providing for fire protection to the City of Tallulah. Regarding payment to volunteer firefighters, Mr. Williams stated that each month the Inpolice jury reviewed invoices and voted to approve payments. He testified that money to pay volunteer fire fighters came from the MPPJ general fund. The money was paid after a volunteer firefighter went to a fire. The police jury wrote a check directly to each volunteer firefighter.
Mr. Beckwith stated that the MPPJ provides funds to the City of Tallulah for providing fire trucks and equipment to fight fires in the parish.
Mr. Griffin said that there was no requirement for training volunteer firefighters who are paid from the Madison Parish general fund.
According to Mr. Doyle, on August 27, 2007, the MPPJ voted to raise the compensation of volunteers to $16.50 per run. He filed a W-9 to receive funds from the MPPJ.
The MPPJ filed a reply memo and attached additional exhibits in support of its argument that the MPPJ was not vicariously liable for the actions of Mr. Marsh. These documents included MPPJ minutes and excerpts from the depositions of Mr. Williams, Ms. Dew, Mr. Doyle, and Mr. Griffin. The MPPJ minutes of November 28, 2005, reflect that volunteer firefighters are not paid employees, but receive a $10 stipend toward their fuel costs for each run. The MPPJ minutes of August 27, 2007, state that the number of volunteer firefighters eligible to receive the stipend was increased from six to eight and the amount of the stipend was raised from $10 to $16.50 per run.
Mr. Williams stated that, as president of the MPPJ, he had no responsibility to govern or regulate emergency personnel in firefighting in Madison Parish. He discussed various fire districts in the parish which have 112their own boards and administration. The parish receives block grant funds from the state and then transfers the money to the fire districts. He said that the Tallulah Fire District responds to calls throughout the parish. The City of Tallulah fire chief submitted a list each month of individuals who attended fires in Madison Parish and the parish would vote to reimburse them for gasoline or travel. These were not payroll checks. The police jury did not select any of the volunteers. The fire districts did not report to the police jury. Madison Parish did not have its own fire district as some other parishes do. The City of Tallulah is responsible for hiring its employees for the fire department. The City of Tallulah fire chief had control over Mr. Marsh. The MPPJ had no authority to select or engage, supervise, instruct, set hours for, terminate, dismiss, or discipline Mr. Marsh who is an employee of the City of Tallulah.
According to Mr. Williams, Mr. Marsh was not a paid employee of the MPPJ. He stated that the MPPJ does not provide any supervision for any volunteer firefighters. The activities at the scene of a fire are controlled by the highest ranking Tallulah Fire Department firefighter at the scene.
In her deposition, Ms. Dew said that the determination of who serves as a volunteer firefighter is not made by the MPPJ. She also claimed that the MPPJ does not train any volunteer firefighters or provide funds for their training. She asserted that Mr. Marsh is not an employee of the MPPJ. When employees of the City of Tallulah make fire runs, they are supervised by the city fire chief. The MPPJ has no control over what occurs at fires and has no control over which individuals respond to fires. The City of 113TalluIah controls the *49 daily time and physical activities of the employees of the City of Tallulah Fire Department and the City of Tallulah was responsible for any necessary disciplinary proceedings. Ms. Dew maintained that the MPPJ could not terminate or dismiss Mr. Marsh. Mr. Marsh received a 1099 tax form from the MPPJ and not a W-2, which is given to employees, and no state or federal taxes were withheld from what was paid to Mr. Marsh.
Mr. Doyle stated in his deposition that he reported money received from MPPJ as income and not as mileage. He testified that he did not receive any training from the MPPJ, did not sign a contract to become an employee of the MPPJ, and did not fill out a job application to become an employee of the MPPJ. When he responds to fires in the parish, the work is supervised by either the fire chief or the assistant fire chief for the City of Tallulah Fire Department. No one from the MPPJ instructed him .how to perform his duties as a firefighter. His work schedule is set by the fire chief for the City of Tallulah Fire Department and not by the MPPJ. He never clocked in or out with the MPPJ and incident reports were made to the fire chief for the City of Tallulah. The MPPJ does not notify him about fire calls and has no power to discipline or terminate him. Mr. Doyle said that he generally receives about $400 to $600 per month from the MPPJ. Mr. Doyle asserted that the City of Tallulah fire chief decides which volunteers are submitted to the MPPJ for payment for work at fires. Mr. Doyle claimed that when he drove the Tallulah fire truck to respond to fires outside the city 114limits, he was paid by the City of Tallulah and also received payment from the MPPJ.
Mr. Griffin said that the MPPJ does not own any emergency or firefighting equipment. He asserted that payments made each month to volunteer firefighters were a stipend for gas. The MPPJ does not have any firefighting employees. The list of those qualified to receive stipends is determined by the City of Tallulah Fire Department.
Mr. Marsh said in his deposition that he is a full-time salaried employee of the City of Tallulah Fire Department. His normal shift was from 7:00 a.m. to 7:00 p.m. When he received the call on the day of this incident, he was already at work. He got into the city fire truck and responded to the call. Mr. Marsh’s 1099 form from the MPPJ for 2007 shows that he received nonemployee compensation in the amount of $868.
In reviewing all petitions, depositions, affidavits, and other materials submitted by the parties in support of and in opposition to the motion for summary judgment, the MPPJ carried its burden of proving that under the factors enumerated in La. R.S. 42:1441.3(0, it was not the master or employer of Mr. Marsh when this accident occurred. The first factor under La. R.S. 42:1441.3(C) in determining which political subdivision may be liable for the offenses and quasi offenses of a public employee of a political subdivision under La. C.C. art. 2320 is the public officer or governmental body politic that exercises the power of selection and engagement of the public employee. In this case, the record shows that the MPPJ set the number of volunteer firefighters, but did not have any input in who was factually chosen to be a volunteer firefighter. The fire chief of the City of Tallulah determined which individuals were qualified to be volunteers and were allowed to answer calls as volunteer firefighters. Some of these individuals, like Mr. Marsh, were full-time employees of the City of Tallulah Fire Department.
The second factor to examine in determining vicarious liability is which public officer or governmental body politic supervises or has the right to control closely the *50 daily time and physical activities of the public employee in carrying out his public duties. In this case, the MPPJ showed that Mr. Marsh’s schedule was set by the City of Tallulah fire chief and the highest ranking person with the City of Tallulah fire department present at a fire supervised the activities of the volunteer firefighters in responding to calls in the parish. The MPPJ showed that it has no right of control or supervision over what transpired during the course of responding to fire or emergency calls by volunteer firefighters.
The third factor to examine in determining which political subdivision is vicariously liable in this matter is the public officer or governmental body politic that exercises the power of disciplinary actions and dismissal of the public employee. The affidavit and depositions in this matter show that the MPPJ did not have any authority to discipline or terminate Mr. Marsh.
The fourth factor in determining which political subdivision is vicariously liable for the actions of Mr. Marsh is the source of funds used for the payment of salaries or wages of the public employee. In this case, |ifithe MPPJ paid volunteer firefighters a $10 stipend for each run. This amount was later raised to $16.50 per run. No state or federal taxes were withheld from these payments, no W-2 form was issued to volunteer firefighters, and the 1099 form issued to Mr. Marsh for 2007 listed the amount paid to him as nonem-ployee compensation. Under the facts of this case, this payment did not create any liability on the part of the MPPJ.
The plaintiffs contend that the most important factor is whether a political subdivision has the right of control over the employee. The plaintiffs cite Matlock v. Hankel, 96-1838 (La.App. 4th Cir.2/11/98), 707 So.2d 1016, writ denied, 98-0594 (La.4/24/98), 717 So.2d 1172, for the proposition that more than one political subdivision can be vicariously liable for the offenses or quasi-offenses of a servant. However, Matlock is factually distinguishable from the present case. In Matlock, an employee of the City of New Orleans Fire Department, who was also a volunteer firefighter for the Fort Pike Volunteer Fire Department, struck a pedestrian while responding to the scene of a fire in his personal vehicle. The fourth circuit determined that both the City of New Orleans and the Fort Pike Fire Department were liable. The volunteer fire department had a fire chief and trained its volunteers. It had a close relationship with the New Orleans Fire Department which supplied fuel and fire engines. The court found that the New Orleans Fire Department dispatcher probably sent the volunteer fire department to this fire. The most important issue in determining that both entities were vicariously liable was the control exercised over the volunteer firefighter. In Matlock v. Hankel, supra, both the volunteer fire department 117and the New Orleans Fire Department had control over volunteers at fires. In the present case, the MPPJ did not exercise any control over volunteer firefighters at fires or other emergencies. See also Wolverton v. City of Kenner, 225 So.2d 662 (La.App. 4th Cir.1969).
The plaintiffs failed to produce factual support to defeat the matters shown by the MPPJ. The MPPJ established that, under the factors listed in La. R.S. 42:1441.3(C), it was not the master or employer of Mr. Marsh when this accident occurred and is not vicariously liable for his actions. The trial court correctly granted summary judgment in favor of the MPPJ.
NEGLIGENT HIRING
The plaintiffs urge that the trial court erred in failing to consider whether the plaintiffs’ claim for negligent hiring, supervising, or training of Mr. Marsh *51 served as an independent basis to defeat the MPPJ’s motion for summary judgment. The plaintiffs contend that there was not only the issue of whether a master/servant relationship existed between the MPPJ and Mr. Marsh, but also whether he was an independent contractor. The plaintiffs maintain that this issue raises questions under the duty/risk analysis which are factual determinations and are not appropriate on a motion for summary judgment. This argument is without merit.
Discussion
As set forth above, the MPPJ established that Mr. Marsh was not its employee and that the MPPJ did not hire, supervise, or train him in any way. The determination of whether a political subdivision is the master of a public employee is a question of law to be determined by the factors | isenunciated by the legislature. Johnson v. City of Pineville, 2005-1054 (La.App. 3d Cir.3/1/06), 924 So.2d 443. Therefore, there was no issue of negligent hiring before the court. The plaintiffs’ argument to the contrary is without merit.[2]
CONCLUSION
For the reasons stated above, we affirm the decision of the trial court granting summary judgment in favor of the Madison Parish Police Jury and dismissing the plaintiffs’ claims against it. All costs in this court are assessed against the plaintiffs.
AFFIRMED.

. La. R.S. 42:1441.3 provides in pertinent part:
A. The master of an individual who is an ... employee of a political subdivision, under the meaning and purpose of Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant, is the particular political subdivision of which such individual is a[n] ... employee.
[[Image here]]
C. Determinants of which political subdivision may be made liable as master for the offenses and quasi offenses of a public employee of a political subdivision under Civil Code Article 2320 and other laws imposing such master-servant liability and for finding an employer-employee relationship, shall include all of the following:
(1) The public officer or governmental body politic that exercises the power of selection and engagement of the public employee.
(2) The public officer or governmental body politic that supervises or has the right to control closely the daily time and physical activities of such public employee in carrying out his public duties.
(3) The public officer or governmental body politic that exercises the power of disciplinary actions and dismissal of the public employee.
(4) The source of the funds used for the payment of salaries or wages of the public employee.
[[Image here]]
E.As provided in R.S. 42:62, the term "political subdivision” means a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions;....
F. Civil Code Article 2320 and other laws imposing liability on a master for the offenses and quasi offenses of his servant shall not extend or apply to and shall not impose liability upon any political subdivision for the offenses and quasi offenses of another political subdivision, the state, or any other governmental body politic, or of the officers, deputies, assistants, employees, appointees, designees, or representatives of such other political subdivision, the state, or any other governmental body politic.
G. Notwithstanding ... Paragraph (4) of Subsection C of this Section, when a political subdivision serves as an independent third-party paymaster for another political subdivision, the state, any state agency, or any other governmental body politic or for any public officer, official, or employee thereof or is otherwise mandated to pay any salaries, stipends, wages, fees, or expenses of any public officer, official, or employee of another political subdivision, the state, any state agency, or any other governmental body politic, neither an employer-employee relationship shall be established nor a master-servant relationship created for the purpose of imposing liability upon the paying political subdivision for the offenses or quasi offenses of a public officer, official, or employee of the other political subdivision, the state, the state agency, or any other governmental body politic.

. The plaintiffs claim that the trial court erred in denying their motion to compel production of evidence dealing with payment to volunteer firefighters. Because we find that the payments did not establish liability on the part of the MPPJ, and because the plaintiffs did not seek supervisory review of the denial of their motion to compel discovery, this issue will not be considered on appeal.