SEXTON, Judge Pro Tem.
| ] Plaintiff, Melanie Gardner, appeals a summary judgment of the trial court in favor of Defendant, Stebbins Engineering and Manufacturing Company (“Stebbins”), dismissing with prejudice her claims against Stebbins. For the reasons stated herein, we affirm.

FACTS

Ms. Gardner is the widow of Toby Gardner, who worked at the Mansfield location of International Paper Company, Inc. (“IP”). On September 28, 2009, Mr. Gardner was repairing a valve on the platform surrounding the top of the linerboard white water tank/tile chest (“whitewater tank”) when he fell through the access opening and into the tank. Tanks such as the one at issue contain pressurized liquid kept at 150 degrees Fahrenheit, pulp fibers and debris. Mr. Gardner died within minutes. The record reflects that the access opening covers are not affixed to the tank and may become dislodged if the tank is overpressurized or overfilled, causing overflow of the liquid and debris onto the top of the tank. Photographs and testimony established that there was pulp debris *136 accumulation around the access opening on the whitewater tank on the day of Mr. Gardner’s accident, indicating that the access opening cover may have been dislodged due to overflow at some point prior to his fall.
Ms. Gardner filed suit against Mike Craft, the manager of the Mansfield paper mill, IP and Stebbins. Stebbins designs and constructs cylindrical concrete tanks or tile chests that can hold cold or hot liquids, and, more than 20 years ago, it designed and manufactured part of the whitewater tank into which Mr. Gardner fell. Stebbins did not design or 12construct the access opening covers on the tanks. Stebbins also has a contractual arrangement with IP to inspect the structural integrity of tile chests at many of its locations worldwide. Ms. Gardner asserted that, through inspections at plants other than the Mansfield paper mill, Stebbins learned that some tile chests were being overpressurized and were overflowing. Ms. Gardner further alleged that this practice caused the access opening covers to become dislodged, presenting a hazard to IP employees working on the tanks, and that the knowledge of this hazardous practice created an obligation on the part of Stebbins to inform IP of the unsafe practice. It should be noted that Stebbins had no such inspection contract for the Mansfield paper mill.
Ms. Gardner took the corporate deposition of Stebbins and Joe Branch testified on its behalf. Mr. Branch conducted the inspections of the tile chests at various IP locations. The whitewater tank at issue at the Mansfield paper mill was not inspected by Stebbins prior to Mr. Gardner’s accident. Mr. Branch testified that, usually, the inspections were requested after a plant had closed and inspections of operating tanks were limited to the structural integrity of the tank. Mr. Branch explained that he “inspect[s] the outside and interior of tile chests and tanks for the outward appearance of the condition of the tile, the cement or the concrete, and the reinforcing steel.” He stated that the inspections have nothing to do with operation of the tank. When he would note overfilling of the tanks, he would be concerned with “cracks or structural flaws that may have occurred from pressure or overpressure,” not with the practice of the plant in [ <¡overpressurizing the tank. Mr. Branch clearly stated that “[w]e’re not trained to operate the plant.”
Stebbins filed a motion for summary judgment arguing that Ms. Gardner’s design claim was perempted under La. R.S. 9:2772 and/or La. 9:5607. It further argued that it had not inspected the whitewater tank at the Mansfield paper mill and had no duty to IP or Mr. Gardner. The trial judge granted the motion, finding “no issue of an affirmative obligation on behalf of Stebbins at the Mansfield Plant. And that 9:2772 in addition to that, bars the claim after five years.” This appeal by Ms. Gardner ensued.

DISCUSSION

The appellate court’s review of a grant or denial of a summary judgment is de novo. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, 99-2257 (La.2/29/00), 755 So.2d 226. A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(B). The burden of proof on a motion for summary judgment remains with the movant. Samaha v. Rau, 07-1726 (La.2/26/08), 977 So.2d 880. When the movant, however, will not bear the burden of proof at trial on *137 the matter that is before the court on the motion for summary judgment, the movant is not required to negate all the essential elements of the adverse party’s claim, action or defense. Id. Rather, the movant need only point out to the court that there is an absence of factual support for one or more elements essential to the ^adverse party’s claim. Samaha, supra. Then, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial, there is no genuine issue of material fact and movant is entitled to summary judgment. See La. C.C.P. art. 966(C)(2).
It is undisputed that Stebbins’ design and construction of part of the whitewater tank at issue was completed and accepted by IP more than 20 years prior to Mr. Gardner’s accident. Stebbins performed no work on or inspection of the whitewater tank after November 28, 1980. La. R.S. 9:2772 provides a peremptive period of 5 years on design and construction claims. Accordingly, absent a showing of some other duty or obligation on the part of Stebbins in this case, all claims of Ms. Gardner against it are clearly perempted.
In a effort to survive peremption, Ms. Gardner argues that Stebbins’ inspections of the tile chests and alleged knowledge of the overfilling and overflowing of tile chests at IP plants, albeit in locations other than Mansfield, created a duty on the part of Stebbins to inform IP of the dangerous operation of the tanks by its employees. In other words, Ms. Gardner asserts that Stebbins assumed a duty to provide safety advice to IP due to its occasional observation and awareness of overpressurizing and overflowing tanks during its inspection of the structural integrity of the walls of the tile chests. We disagree.
In Bujol v. Entergy Services, Inc., 03-0492 (La.5/25/04), 922 So.2d 1113, the supreme court explained:
One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as |5necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect [perform] his undertaking, if
(a) his failure to exercise reasonable care increases the risk of harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
This common law doctrine has existed for centuries and has traditionally been used to impose liability upon an actor who has failed to exercise reasonable care when it undertook to perform a duty owed to a third party.
The Bujol court was faced with the question of whether a parent corporation had assumed a duty for the workplace safety of its subsidiary, the plaintiffs employer. The supreme court noted that, under Louisiana jurisprudence, “parties who voluntarily assume certain duties for work place safety must perform those duties in a reasonable and prudent manner.” Bujol, supra. In order to find such an assumed duty, the supreme court required “some proof of positive undertaking” for work place safety, stating that “neither mere concern with nor minimal contact about safety matters creates a duty to ensure a safe working environment for employees of a subsidiary corporation.” Bujol, supra, citing Muniz v. National Can Corp., 737 F.2d 145 (1st Cir.1984).
Here, there is no evidence that Stebbins positively undertook any obligation to en *138 sure the safety of IP employees. To the contrary, the evidence conclusively establishes that the only obligation on the part of Stebbins was to inspect for structural integrity certain tanks as requested by RIP. Stebbins exhibited no concern for, or contact with, the operational safety of IP plants or, specifically, the tile chests. Bu-jol, supra; Muniz, supra. There simply is no basis in law for the creation or assumption of any duty on the part of Stebbins to ensure the safe operation of the IP tanks. The trial judge properly granted Stebbins’ motion for summary judgment.

CONCLUSION

For the foregoing reasons, the summary judgment in favor of Stebbins Engineering and Manufacturing Company is affirmed. Costs of appeal are assessed to Plaintiff, Melanie Gardner.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, MOORE, LOLLEY & SEXTON (Pro Tempore), JJ.
Rehearing denied.