712 So.2d 989 (1998)
Dale GUARINO
v.
KAISER ALUMINUM & CHEMICAL & James LeBlanc.
No. 97-CA-926.
Court of Appeal of Louisiana, Fifth Circuit.
May 13, 1998.
Rehearing Denied June 17, 1998.
*990 Alonzo Stanga, III, William Mustian, III, Metairie, for Plaintiff-Appellee.
Albert Hanemann, Jr., New Orleans, for Defendant-Appellant.
Before GRISBAUM, DUFRESNE, WICKER, CANNELLA and DALEY, JJ.
DUFRESNE, Judge.
This is an appeal by Kaiser Aluminum & Chemical Corporation and James LeBlanc, defendants-appellants, from a $300,000.00 jury verdict in a suit by Dale Guarino, a Kaiser employee. Guarino claimed to have been injured on the job by an intentional act on the part of LeBlanc, his temporary shift foreman, thus permitting him to assert a tort action as per La. R.S. 23:1032. Because we determine that the evidence presented, even when taken in a light most favorable to plaintiff, does not establish as a matter of law that an intentional tort was committed, we must set aside the judgment.
The appellants submit here that they do not challenge plaintiff's version of the basic facts of the incident giving rise to this litigation. Instead, they contend that even taking those facts to be true plaintiff has not established an intentional tort. We thus proceed with those propositions in mind.
Dale Guarino is an employee of Kaiser Aluminum at its refining plant in St. James Parish. On the day in question, his regular shift foreman, Raymond Gros, had been temporarily replaced by James LeBlanc. At the end of his shift, Guarino returned to the tool locker area with an impact wrench, a twelve to eighteen pound hand tool, with an air hose attached to it. As he was standing in front of one of the lockers, LeBlanc approached him and asked for the wrench, apparently believing that it was his. Guarino refused to hand over the tool, even though it did have LeBlanc's name on it. He explained to Le-Blanc that Gros, the regular foreman, had given his crew specific instructions to return all tools used on their shift to their shift's designated tool locker. Guarino testified that he was holding the tool in his hand, which was in turn just above his shoulder, with the hose dangling off of an outstretched finger. At that point, LeBlanc said "F___ Raymond Gros," and grabbed the tool out of Guarino's hand. Guarino contended that the action was so quick that he did not have time to release his grip on the tool and that his arm was twisted as LeBlanc pulled it away. This in turn resulted in an injury to his rotor cuff which eventually required surgery to repair.
Guarino gave the most detailed explanation of the incident on cross-examination, as follows:
Q. And when you were demonstrating earlier how you were carrying this wrench, it was my impression that you had it kind of propped up on your shoulder.
A. Yes.
Q. Holding it in your hand.
A. More or less balancing it with my hand.
Q. All right. So you were kind of balancing it up on the shoulder, and you had both the coil and the wrench itself up on your shoulder?
A. I had the hose coiled around one of my fingers sticking out.
Q. You didn't have the coil wrapped around your arm?
A. No.
Q. Or your shoulder?
A. No.
Q. It was just resting there?

*991 A. It was resting on the finger or whatever.
Q. Was it attached in any way to your body or to your clothing?
A. I would not think so.
Q. You didn't have any kind of strap or a pen [sic.] or anything like that holding it there?
A. No.
Q. Now, your testimony is that Jimmy LeBlanc removed the gun, the impact wrench from your shoulder?
A. Yes, without a doubt.
Q. And you can't really say how he did it or what happened?
A. I wasn't facing the man. I didn't see him coming. He hit me blind sided.
Q. So you don't really know how he did it?
A. All I know is the wrench was on my shoulder and then it wasn't on my shoulder.
Q. And it just happened that fast?
A. Right. It was a fast action.
Q. Did you fall down?
A. No.
Q. Did you get pulled back into the locker?
A. I don't recall getting pulled back. I don't know.
Q. Did you get jerked on one side or the other?
A. Not that I recall. I don't know. It was a fast action.
Q. You don't really know what happened to your body in this incident, do you?
A. I know the impact wrench was on me and then it wasn't on me.
Q. Suddenly it was gone.
A. Yes.
Q. And you can't explain it better than that.
A. Well, milliseconds after it happened Jimmy had the wrench in his hand, and I told him don't ever do that again, and he said I should have let it go. So that showed me that he took it from me. And there was no one else present.
Q. Did LeBlanc grab any part of your body?
A. No.
Q. So the only thing he touched, as far as you know, is the impact wrench itself?
A. As far as I know, that is all he touched. It was a real quick sudden jerk movement, whatever it was I don't know. It was quick whatever happened.
As urged by the defendants, we accept Guarino's version of the incident as presented in this testimony. The question, then, is whether this evidence is sufficient to established commission of an intentional stort by LeBlanc.
In White v. Monsanto Co., 585 So.2d 1205, 1208 (La.1991), the court set forth the law concerning "intentional acts" in the workers' compensation context, as follows:
LSA-R.S. 23:1032 makes worker's compensation an employee's exclusive remedy for a work-related injury caused by a coemployee, except for a suit based on an intentional act. The words "intentional act" mean the same as "intentional tort." The legislative aim was to make use of the well-established division between intentional torts and negligence in common law. The meaning of intent is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that that result is substantially certain to follow from his conduct, whatever his desire may be as to that result. Thus, intent has reference to the consequences of an act rather than to the act itself. Only where the actor entertained a desire to bring about the consequences that followed or where the actor believed that the result was substantially certain to follow has an act been characterized as intentional. Bazley v. Tortorich, 397 So.2d 475 (La.1981).

We further note that the "substantially certain" language has reference to what a reasonable man in a defendant's position would believe. W. Prosser, Law of Torts, § 8 (4th ed.1971).
*992 In the case before us, there is no evidence to suggest, much less to establish by a preponderance of the evidence, that LeBlanc actually intended to injure Guarino. Further, a reasonable man would not have believed that grabbing a tool out of someone's hand would be substantially certain to cause injury. Thus, neither prong of the intentional tort analysis has been met in this case. That being so, Guarino's sole remedy under La. R.S. 23:1032, lies in workers' compensation.
Guarino cites Caudle v. Betts, 512 So.2d 389 (La.1987) in support of his argument that an intentional tort was committed by Le-Blanc. We find that case factually dissimilar, however. There, the president of a corporation shocked an employee on the neck with an automobile condenser, and caused severe nerve injury. The defense asserted that because the tortfeasor did not intend to cause an injury of the severity that actually resulted, no intentional tort had been committed. There was no question in the case that the tortfeasor intended to harm the plaintiff, and although he may not have intended to harm his so badly, a tortfeasor nonetheless takes his victim as he finds him.
That is not the circumstance here. The evidence simply does not establish that Le-Blanc intended any injury whatsoever, and further, a reasonable man would not have anticipated that any injury would result from the act. In these circumstances we can only conclude that no intentional tort was committed.
For the foregoing reasons, we vacate the judgment of the district court in plaintiffs favor, and dismiss the matter.

JUDGMENT VACATED, MATTER DISMISSED.
CANNELLA, J., dissents.
CANNELLA, Judge, dissenting.
I would affirm the jury verdict in this case for the following reasons.
When an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged, in order to determine whether he has proved his cause of action and the damages recoverable thereunder. Caudle v. Betts, 512 So.2d 389, 391 (La.1987); Stewart v. Parish of Jefferson, 95-407 (La.App. 5th Cir. 1/30/96), 668 So.2d 1292, 1294.
In Caudle v. Betts, 512 So.2d 389 (La. 1987), the Louisiana Supreme Court held that a battery was an intentional tort for purposes of the workers compensation act. There, the court found that an intentional battery had occurred when plaintiff's employer's principal owner and chief executive officer intentionally touched and shocked the plaintiff with an auto condenser as a practical joke. The court stated:
A harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact, is a battery ... The intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent. (Citations omitted)
The original purpose of the courts in providing the action for battery undoubtedly was to keep the peace by affording a substitute for private retribution. F. Stone, Louisiana Civil Law Treatise, Tort Doctrine, § 125 (1977). The element of personal indignity involved always has been given considerable weight. Consequently, the defendant is liable not only for contacts that do actual physical harm, but also for those relatively trivial ones which are merely offensive and insulting. W. Prosser and W. Keeton, The law of Torts, § 9 (5th ed. 1984); Harrigan v. Rosich, 173 So.2d 880 (La.App. 4th Cir.1965).
The intention with which tort liability is concerned is not necessarily a hostile intent, or a desire to do any harm ... Rather it is an intent to bring about a result which will invade the interest of another in a way that the law forbids. The defendant may be liable although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff, or even though seeking the plaintiff's own good. (Citations omitted)

*993 Bodily harm is generally considered to be any physical impairment of the condition of a person's body, or physical pain or illness ... The defendant's liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which the defendant did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim. (Citations omitted)
Caudle v. Betts, 512 So.2d at 391-392.
Likewise, in Villa v. Derouen, 614 So.2d 714 (La.App. 3 Cir.1993), a co-employee pointed a welding cutting torch in plaintiff's discretion and intentionally released oxygen or acetylene gas that caused unintentional harm to plaintiff in the form of burns to his groin area. In that case, the Third Circuit stated that to constitute a battery, defendant need only intend that the oxygen he sprayed toward the plaintiff come into contact with him or that he have knowledge that this contact was substantially certain to occur.
The Caudle case is the authority for the facts in this case. This was a intentional battery. Under Caudle, the jury did not err in finding that the intentional tort exclusion to the worker's compensation act applies. Thus, I would affirm that portion of the judgment. I would reduce the damages.