| .MARION F. EDWARDS, Judge.
Plaintiff/Appellant, Kim Chabert, appeals from a trial court ruling which granted summary judgment in favor of defendants, Mothe Life Insurance and Nick Beninate, on the issue of whether Cha-bert’s cause of action qualified as an intentional act exception to La. R.S. 23:1032. For the following reasons, the judgment of the trial court is affirmed.
*622 FACTS AND PROCEDURAL HISTORY
On September 7, 2001, plaintiffiappellant Kim Chabert (“Chabert”) was employed as a collection agent by Mothe Life Insurance Company (“Mothe”), which is located in Jefferson Parish. On the morning of that date, Chabert was in the process of obtaining paperwork from a file drawer when she claims that she was deliberately pushed down by a co-worker, Nicholas Be-ninate (“Beninate”). Chabert alleges that as a result of the fall that ensued, she sustained a herniated disc in her back which required surgery.
laChabert thereafter filed suit on August 20, 2002, in the Twenty-Fourth Judicial District Court for the Parish of Jefferson against both Beninate and Mothe (“defendants”) alleging that Beninate’s acts were intentionally performed within the course and scope of his employment with Mothe, and that Mothe was therefore vicariously liable. Following discovery, defendants filed a Motion for Summary Judgment on December 29, 2003, alleging that Beninate did not commit an intentional act as a matter of law, and that Chabert’s exclusive remedy was under Louisiana Workers’ Compensation Law.
Following a hearing on February 19, 2004, the trial court granted defendants’ Motion for Summary Judgment. Chabert timely filed the present appeal.
LAW AND ARGUMENT ■
On appeal, Chabert raises four assignments of error: 1) That the trial court failed to apply.the correct legal standard for defining an intentional tort; 2) The trial court erred in finding that Chabert was not the victim of an intentional tort; 3) Genuine issues of material fact exist in this case which preclude summary judgment, and; 4) The trial court erred in finding that Beninate’s conduct was not committed within the course and scope of employment!
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate.[1] An appellate court must ask the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is a genuine issue of material .fact remaining to be decided, and whether the appellant is entitled to judgment as .a matter of law.[2] The. appellate court must con-siderjjwhether the summary judgment is appropriate under the circumstances of the case.[3] There must be a “genuine” or “triable” issue on. which reasonable persons could disagree.[4] Under the amended version of LSA-C.C.P. art. 966, the burden of proof remains on the moyer to show “that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.” A material fact is one that would matter on the trial of the merits.[5]
In her first assignment, Chabert asserts that the trial court failed to apply the correct standard to determine whether Be- *623 ninate’s alleged act rose to the level of an intentional tort.
Louisiana jurisprudence is replete with illustrations and explanations of the intentional act exception to La. R.S. 23:1032 as it pertains to an employer’s liability to prosecution. As the Louisiana Supreme Court noted in Smith v. Tanner Heavy Equipment Co., Inc.,[6] citing its previous opinion in Bazley v. Tortorich:[7]
We held that the meaning of “intent” in this context “is that the person who acts either (1) consciously desires the physical result of his act, whatever the likelihood of that result happening from his conduct; or (2) knows that the result is substantially certain to follow from his conduct, whatever his desire may be as to that result.”
In Nicks v. AX Reinforcement Co.,[8] this Court further recounted:
The “substantially certainty” element has been explained in this context as follows:
The traditional definition is simply a way of relieving the claimant of the difficulty of trying to establish subjective state of mind (desiring the consequences) if he can show substantial certainty that the consequences will follow the act. The latter the case out of the realm of possibility or risk (which are negligence terms), and expresses the concept that an actor with such a certainty cannot be believed if he denies that he knew the | «¡consequences would follow. In human experience, we know that specific consequences are substantially certain to follow some acts. If the actor throws a bomb into an office occupied by two persons, but swears that he only “intended” to hurt one of them, we must conclude that he is nonetheless guilty of an intentional tort as to the other, since he knows to a virtual certainty that harmful consequences will follow his conduct, regardless of his subjective desire.
Malone & Johnson, Louisiana Civil Law Treatise, Volume 14, Workers’ Compensation Law & Practice, § 365, p. 208.
“Substantially certain to follow requires more than a reasonable probability that an injury will occur and ‘certain’ has been defined to mean ‘inevitable’ or ‘incapable of failing.’ ” Jasmin v. HNV Cent. Riverfront Corp., 94-1497 (La. App. 4th Cir.8/30/94), 642 So.2d 311, writ denied, 94-2445 (La.12/9/94), 647 So.2d 1110 at 312.[9]
The record before us does not contain written reasons for judgment, however on the date of the hearing on Appellants’ Motion for Summary Judgment, the trial court explained:
... Having been through this thing over and over again, many times, unfortunately, and taking plaintiffs best case scenario, it was a push, it was definitely an intentional, or appears to be that they could show an intentional act.
Whether or not it’s an intentional act under the meaning of removing you from the Workman’s Comp into the tort liability, even under the best case scenario, I can’t find it. I’m sorry. Because they even have people pointing a gun at somebody and shooting them, and it wasn’t an intentional act underneath the Workman’s Comp, meaning to remove it from comp. The act was in *624 tentional. It’s the consequences of the act, they make it, the law, in my opinion, makes it so hard to show that you were certain or substantially certain that the harm would occur that you just don’t have them.
So I’m going to, and under the vicarious liability, also, I believe that the summary judgment is well founded, and I’m going to grant the motions for summary judgment. [Emphasis added.]
As can be seen from the preceding statements, clearly the trial court used the proper standard to determine whether or not the incident in question qualified as an intentional act exception to La. R.S. 23:1032.
Chabert next asserts that the trial court erred in finding that she was not the victim of an intentional tort, and that issues of material fact exist which should have precluded summary judgment on this issue.
IfiThe record reflects that Chabert had given two different versions of the alleged incident prior to the hearing on defendants’ motion. In a memorandum dated September 7, 2001, which was provided to Mothe, Chabert wrote:
At approximately 07:30 while employed by Mothe Life Insurance — Company I was in the process of retreaving [sic] my group sheet book, while standing next to a fellow employee Nick Beni-nate we bumped shoulders which caused me to loose [sic] my balance and fall to the floor.
In her subsequent deposition, however, Chabert characterized the alleged “bump” from Beninate as an intentional act committed while Beninate was bending down to retrieve his book. Chabert testified that Beninate actually bumped her multiple times and then “leaned” on her until she fell. Chabert testified that she did not put this information into her prior statement because she did not realize that she was injured so severely and because she did not wish to get Beninate into trouble.
. In his deposition, Nicholas Beninate gave his version of the events that led to Chabert’s alleged injury. Beninate stated that he had gotten up from his desk to retrieve some envelopes, when Chabert approached him. Chabert said to him in a joking manner, “Hey, boy, get out of the way.” Beninate said that Chabert’s left shoulder bumped his right shoulder at that time. Beninate then testified that as he backed away, Chabert moved toward the back wall and slid down. Afterwards, she was in a sitting position and laughing while holding office supplies in her hands. Beni-nate then described the following exchange between himself and Chabert:
BENINATE:
And she [Chabert] mentioned, she said, “You [Beninate] tripped me.” And I said, “yeah, I must have stepped on you long pants.” And she was wearing capris that day.
COUNSEL:
And capris, when you say long pants, they’re not actual full-length pants, are they?
BENINATE:
No, they’re not.
^COUNSEL:
When you said you stepped on her pants, were you being facetious? ...
You were clowning around, in other words—
BENINATE:
Yes.
COUNSEL:
So what transpired between you and Chabert after she said “You tripped me”?
BENINATE:
I didn’t want to grab her to help her up because I knew she was just back from her breast cancer surgery, and I *625 was unsure exactly what side. So I didn’t want to hurt her. She just said, “Wait. Wait.” She handed me her papers and then she proceeded to get up. COUNSEL:
She got up on her own?
BENINATE:
Uh-huh.
Beninate further denied intentionally “bumping” into Chabert.
The record contains the deposition testimony of Linda Sperandeo, a co-worker of Beninate and Chabert. Sperandeo testified that she heard Chabert tell Beninate to “Move out of my way,” or “Get out of my way.” She then saw Chabert walk to Beninate’s right side. Spreandeo described what she then saw happen next:
SPERANDEO:
Seconds went by. And I’m standing there and I notice movement from Kim Chabert. And I noticed movement from Nick Beninate. He turned towards his right, like a step angling from the cubbyhole to the right side. And the next thing I saw was Kim Chabert slowly going backwards toward the wall. And it was like in slow motion. She just, like, leaned against the wall and slid down the wall and hit her bottom ... And she just sat there with her legs out ... And she had a paper in her hand. She was smiling. Because by that time I had already said to Bill, I said, (The witness gasps) “My gosh, Kim fell.’ ... She’s [Cha-bert], like sitting there smiling, not laughing, just smiling, with the paper in her hand and pen in her hand. And Nicky was going to approach her to help her, and someone in the outer office said, “Don’t touch her. Don’t touch her,” because she just had some kind of surgery. And he didn’t. Then I proceeded slowly Lpast them and looked at her and she was, you know, “give me a minute.” You know, “I’ll be okay.”
In opposition to Mothe’s Motion For Summary Judgment, Chabert attached four affidavits from co-workers who were in the office at the time of the alleged incident. Betty Boudreaux, Shryel Billiot, and Rickey Hernandez, all stated in their affidavits that while they did not witness what occurred between Chabert and Beni-nate, they did hear Linda Sperandeo say out loud immediately after the event that Beninate had pushed Chabert. Donna Du-bison stated in her affidavit that she witnessed Beninate push Chabert two times, and that she heard Linda Sperandeo state immediately after the event that she had seen Beninate push Chabert.
Chabert argues that the conflicting accounts of the incident contained in the record constitute a genuine issue of material fact which should have precluded summary judgment. The trial court noted, however, that in granting the summary judgment, it assumed that Chabert could prove that Beninate had acted intentionally. The court further stated that even if Beninate’s conduct could be shown as intentional, Chabert did not show that Beni-nate was substantially certain that her injuries would follow.
In the case of Guarino v. Kaiser Aluminum & Chemical,[10] this Court considered a similar issue. In Guarino, a worker at Kaiser Aluminum sustained an injury to his rotor cuff, which eventually required surgery to repair, after his foreman intentionally grabbed and pulled a tool out of his hand. In that case, there was no dispute that the contact was intended. We noted, however, that there was no evidence to suggest that the supervisor actually in *626 tended to injure Guarino, and further that a reasonable man would not have believed that grabbing a tool out of someone’s hand would be substantially certain to cause injury. We concluded that |9since neither prong of the intentional tort analysis had been met, Guarino’s sole remedy was under workers’ compensation.
Conversely, Chabert cites to the case of Caudle v. Betts,[11] in which the Louisiana Supreme Court held that a defendant' may be liable for a battery, although intending nothing more than a good-natured practical joke, or honestly believing that the act would not injure the plaintiff. In Cau-dle, the plaintiff was at a Christmas office party when he was approached by an executive in the conipany who shocked him with an electric automobile condenser. Caudle suffered nerve damage as a result.
As we did in Guarino, we find the Cau-dle case to be factually dissimilar, however. In Guarino, we concluded:
[In Caudle] the president of a corporation shocked an employee on the neck with an automobile condenser, and caused severe nerve injury. The defense asserted that because the tortfea-sor did not intend .to cause an injury of the severity that actually resulted, no intentional tort had been committed. There was no question in the case that the tortfeasor intended to harm the plaintiff, and although he may not have intended to harm his so badly, a tortfea-sor nonetheless takes his victim as he finds him.
That is not the circumstance here. The evidence -simply does not establish that LeBlanc intended any injury whatsoever, and further, a reasonable man would not have anticipated that any injury would result from the act. In these circumstances we can only conclude that no intentional tort was committed.
Similarly, in the present case, we can not say that the trial court erred in finding that there was no evidence that Beninate was substantially certain that Chabert would either fall or be injured as a result of being “bumped”, even assuming that Beninate acted intentionally, as Chabert suggests. We can not disagree with the trial court’s conclusion that Chabert has not shown that Beninate’s alleged act of “bumping” into her, even if intentional, was incapable of failing to cause her injury. As in Guarino, Chabert’s remedy lies under workers’ | ^compensation. Accordingly, after a review of the record, we affirm the trial court on this issue.
Based upon our foregoing findings, we will pretermit discussion on Chabert’s remaining assignment of error.
Accordingly, for the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED

. Bua v. Dressel, 96-79 (La.App. 5th Cir.5/28/96), 675 So.2d 1191; writ denied, 96-1598 (La.9/27/96), 679 So.2d 1348; citing Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180.

. Tassin v. City of Westwego, 95-307 (La.App. 5th Cir. 12/13/95), 665 So.2d 1272.

. Rowley v. Loupe, 96-918 (La.App. 5th Cir.4/9/97), 694 So.2d 1006.

. Id. at 1008.

. J.W. Rombach, Inc. v. Parish of Jefferson, 95-829 (La.App. 5th Cir.2/14/96), 670 So.2d 1305.

. 2001-0886 (La.6/15/01), 790 So.2d 615.

. 397 So.2d 475, 481 (La.1981).

. 02-1116 (La.App. 5 Cir. 2/25/03), 841 So.2d 987.

. Mat 991.

. 97-926 (La.App. 5 Cir. 5/13/98), 712 So.2d 989; Writ denied, 1998-1893 (La. 10/30/98), 727 So.2d 1165; Certiorari Denied by 526 U.S. 1039, 119 S.Ct. 1334, 143 L.Ed.2d 499 (1999).

. 512 So.2d 389, (La.1987).