LOLLEY, J.
|! Melanie Gardner (“Gardner”), on behalf of her deceased husband, Toby Gardner, appeals a judgment from the 42nd Judicial District Court, Parish of DeSoto, State of Louisiana, granting summary judgment in favor of International Paper Co. (“IP”), Mike Craft (“Craft”), Zachry Industrial, Inc. (“Zachry”), Kellogg, Brown & Root, L.L.C., and Kellogg, Brown & Root Services, Inc. (collectively, “KBR”). For the reasons stated herein, we affirm the trial court’s judgment.
Facts
On September 28, 2009, Toby Gardner, while in the course and scope of his employment with Zachry, was dispatched to the top of the Liber Board Tank No. 102 (the “tank”) at the IP mill in Mansfield, Louisiana, for the purpose of repairing a malfunctioning valve.[1] Unfortunately, during this assignment Toby Gardner fell into the tank through an unsecured access opening and died. While other employees and IP personnel were at the scene, no one witnessed the fall; thus, the exact cause of the fall is unknown.
Tanks such as the one in question contain “whitewater,” which is a pressurized liquid kept at 150 degrees Fahrenheit mixed with pulp fibers and debris. The access openings on these tanks are not affixed and may become dislodged if the tank is overpressurized or overfilled, causing an overflow of the whitewater onto the top of the tank. By its very nature, whitewater is a very dangerous substance and can be extremely slippery when outside the tank.

19IP, Craft, and Zachry

The record reveals that at approximately midnight on September 27, 2009, the tank overflowed, resulting in whitewater being spilled onto the top of the tank. The overflow also caused the metal lid that covered the access opening to become unseated. The following morning, an IP control room operator contacted Craig Masters (“Masters”), a Zachry electrician and co-employee of Toby Gardner, and requested that he assemble a crew of Zachry employees to go to the top of the tank to diagnose a valve problem that was preventing it from filling with whitewater. Because this area was “restricted” due to the presence of hydrogen sulfide gas (“H2 S”), Masters and his crew had to get approval to work in the area, wear H2S sensors, and be accompanied to the top of tank by an IP field operator. On the day of the incident, the field operator assigned to the task was Cody Whitlock (“Whit-lock”).
Upon arrival at the tank, the crew was faced with the following conditions: (1) burning hot steam from a leaking valve; (2) toxic H2S gas; (3) clutter, including waste and rusted pipes; and (4) slippery whitewater and pulp debris stemming from the overflow. These employees traversed *73 the top of the tank for several hours, but were ultimately unsuccessful in diagnosing the problem. While on top of the tank, the employees noted the slippery conditions and H2S gas, but no falls or trips occurred.
Believing that Toby Gardner would be more successful in repairing the valve, Masters asked him to join the crew. In order to approach the valve, Toby Gardner had to walk around the steam, through the slippery |swhitewater and H2S gas, and near the unsecured access opening. Unfortunately, Toby Gardner never reached the valve.
Toby Gardner was last seen on the left side of the tank near the left side of the access opening. Although no one saw Toby Gardner fall into the tank, Whitlock noted that out of the corner of his eye, he saw the cover to the access opening flip. At that point, Toby Gardner was in the tank and hollering. Despite a rescue attempt by a co-employee, Toby Gardner quickly succumbed to his injuries and died.

KBR

In 1980, KBR entered into a general construction contract with IP for the design and construction of certain portions of this particular mill. KBR then entered into a subcontract with Stebbins Engineering and Manufacturing Company (“Steb-bins”) to design and construct the walls and top of the tank. KBR turned over the tank, including the cover, to IP in 1982. Thereafter, KBR entered into a series of consecutive maintenance contracts with IP for the purpose of maintaining the mill as a safe place to work. The last of these series of contracts, and the one at issue in this appeal, covered the period of December 12, 2002, to December 31, 2005. In this particular contract, KBR agreed to provide and maintain all facilities necessary for the ample protection of the public and the workers employed about the site as may be required by any state law and the federal Occupational Safety and Health Act (“OSHA”).
Gardner filed suit against IP, Craft, the mill’s manager, Zachry, and KBR, among other defendants, seeking to recover damages for the death of |4her husband.[2] Gardner asserted two independent causes of action relevant to the defendants in this appeal. First, as to IP, Craft, and Zachry, Gardner alleged that Toby Gardner’s death was the result of an intentional act, thus avoiding the exclusive remedy provision of the Louisiana Workers’ Compensation Act. Second, Gardner alleged that KBR, as designer, manufacturer and/or installer, turned over a defective tank that presented an unreasonable risk of harm. Gardner also alleged that KBR breached its maintenance contract by failing to remedy the dangerous condition presented by the unsecured access opening. In particular, Gardner argued that according to OSHA regulations, KBR should have secured the cover, or alternatively, guarded it with handrails.
In response to Gardner’s allegations, IP, Craft, and Zachry each filed motions for summary judgment arguing that Gardner could not prove the defendants, or any other IP employees, committed intentional acts which were substantially certain to cause injury to Toby Gardner. KBR also *74 filed a motion for summary judgment arguing that any claim against it is perempt-ed under La. R.S. 9:2772.
The parties then embarked on a lengthy discovery odyssey, which resulted in five amended petitions, continuances, numerous depositions, and a pre-trial record of fourteen volumes. ! The motions, along with several hours of argument and supporting exhibits, were presented to the court on |r,March 25, 2013. After taking the matter under advisement, the trial court, in a thorough and well-written opinion, granted summary judgment in favor of IP, Craft, Zachry, and KBR. The trial court noted that despite evidence of dangerous working conditions, there was no evidence that IP, Craft, or Zachry knew Toby Gardner’s injury was substantially certain to occur when he was dispatched to repair the malfunctioning valve. In particular, the trial court focused on the fact that no one knew exactly what happened to cause Toby Gardner’s fall, and at least four other co-employees had safely navigated the same tank without incident. As a result, there was no intentional act to except this matter from the exclusive remedy of workers’ compensation.
As to KBR, the trial court found that all of Gardner’s claims were perempted pursuant to La. R.S. 9:2772, as more than five years had elapsed since KBR turned over the facility and the subject tank to IP. Additionally, the trial court held that KBR’s maintenance contract with IP did not impose an affirmative duty on the part of KBR to redesign or reconstruct the tank and that even if KBR assumed such duty, such claim would also be perempted as it is indistinguishable from a design defect claim. It is from this judgment that Gardner appeals.
Summary Judgment
Appellate courts review summary judgments de novo under the same criteria that govern the district court’s consideration of whether summary judgment is appropriate. Independent Fire Ins. Co. v. Sunbeam Corp., 1999-2181 (La.02/29/00), 755 So.2d 226; Young v. Marsh, 46,896 (La.App.2d6 Cir.01/25/12), 86 So.3d 42. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A). A motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mov-ant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. La. C.C.P. art. 966(C). Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and the movant is entitled to summary judgment. Id.
Discussion
On appeal, Gardner cites five assignments of error, each related to her separate causes of action against IP, Craft, Zachry, and KBR. As to IP, Craft, and Zachry, Gardner maintains that the trial court erred in failing to recognize that the conditions of the tank all qualify as immediate and apparent risks of harm, which *75 made it substantially certain that on the day 17Toby Gardner was dispatched to the top of the tank, an injury would occur.

IP, Craft, and Zachry

An employee injured in the course of his employment is generally not allowed to recover tort damages against his employer. Clinton v. Reigel By-Products, Inc., 42,497 (La.App.2d Cir.09/19/07), 965 So.2d 1006, writ not cons., 2007-2239 (La.02/15/08), 976 So.2d 168. Rather, the employee’s exclusive remedy for workplace injuries is workers’ compensation, unless the employee’s injuries are the result of an intentional act. La. R.S. 23:1032(A) and (B); Clinton, supra. The intentional act exception to workers’ compensation is narrowly construed. Reeves v. Structural Preservation Sys., 98-1795 (La.03/12/99), 731 So.2d 208. Gross negligence does not equate to an intentional act, nor does the failure to provide safety equipment or a violation of safety standards typically suffice to establish liability under the intentional act exception. Berry v. Valley Gin, Inc., 44,433 (La.App.2d Cir.07/01/09), 16 So.3d 494.
Establishing that a workplace injury resulted from an intentional act requires evidence that the employer either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2) knew that result was substantially certain to follow from his conduct, whatever his desire may have been as to that result. Moreau v. Moreau’s Material Yard, L.L.C., 2012-1096 (La.09/21/12), 98 So.3d 297; Reynolds v. Louisiana Plastic, 44,803 (La.App.2d Cir.10/28/09), 26 So.3d 149, writ denied, 2009-2805 (La.03/05/10), 28 So.3d [81013. Because nothing in this record indicates that IP, Craft, or Zachry consciously desired Toby Gardner’s injuries, the issue is whether they knew that Toby Gardner’s injuries were substantially certain to follow.
The phrase “substantially certain to follow” requires more than a reasonable probability that an injury will occur. Simoneaux v. Excel Group, L.L.C., 2006-1050 (La.09/01/06), 936 So.2d 1246. This term has been interpreted as being equivalent to “inevitable,” “virtually sure,” and “incapable of failing.” Crockett v. Therral Story Well Serv., Inc., 45,716 (La.App.2d Cir.01/05/11), 57 So.3d 355, writ not cons., 2011-0263 (La.03/25/11), 61 So.3d 650. Believing that someone may, or even probably will eventually get hurt if a workplace practice is continued does not rise to the level of an intentional act, but instead falls within the range of negligent acts that are covered by workers’ compensation. Reeves, supra. Neither knowledge and appreciation of a risk nor reckless or wanton conduct by an employer constitutes an intentional wrongdoing. Id. Further, even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering a claimant to perform an extremely dangerous job, or willfully failing to furnish a safe place to work, this still falls short of the actual intention to injure that robs the injury of accidental character. Id.
Initially, we note that a motion for summary judgment is the proper procedural tool to penetrate a plaintiffs general allegation that an injury resulted from an intentional tort. Williams v. Superior Uniform Group, Inc., 73,176 (La.App.2d Cir.05/22/03), 847 So.2d 244, writ denied, 2003-2023 |fl(La.ll/07/03), 857 So.2d 494. Here, IP, Craft, and Zachry, as movants, bore the initial burden of proof. However, because they would not bear the burden of proof at trial, their burden on summary judgment was simply to point out to the *76 trial court that there was an absence of factual support for one or more elements essential to Gardner’s claim. As discussed above, to prove an intentional act under the Louisiana Workers’ Compensation Act, Gardner had to prove that IP, Craft, and Zachry knew an injury was substantially certain to follow from directing Toby Gardner to work under such open and dangerous conditions. We conclude that Gardner failed to do so.
In opposing defendant’s motion, Gardner offered numerous affidavits, deposition testimony, and pictures from the day of Toby Gardner’s death. The purpose of each piece of summary judgment evidence was to show that there were immediate and apparent risks of harm that made it substantially certain that an injury was to occur when an employee was sent on top of the tank. Specifically, Gardner alleged that the tank’s top was so slippery that a worker was substantially certain to fall unless he was able to hold onto a fixed object at all times. Moreover, Gardner points to the fact that prior to Toby Gardner’s death, Masters experienced, and Whitlock observed, members of Masters’ crew experiencing difficulty traversing the tank due to H2S gas and the slippery surface of the tank. Thus, when Toby Gardner was sent on top of the tank, Gardner contends that IP, Craft, and Zachry had knowledge of the dangerous conditions and dispatched him anyway.
| j nWhile we recognize that the conditions on top of the tank on the day of Toby Gardner’s death were extremely dangerous and even resulted in IP being cited for OSHA violations, jurisprudence is quite clear that this conduct does not rise to the level of an intentional act so as to provide the plaintiff with a remedy over and above that provided by the Louisiana Workers’ Compensation Act. See Crockett, supra. The fact remains that Toby Gardner’s injuries were not an inevitable consequence of being sent to work on top of the tank. IP’s, Craft’s, and Zachry’s actions may have been reckless, negligent, or even grossly negligent, but they were not intentional as the affidavits of Masters and Whitlock indicate.
In particular, both men brought attention to the dangerous conditions the crew faced as they were attempting to diagnose the problem. However, their affidavits also contain factual information which shows that it was not substantially certain that an injury was going to occur. Specifically, in Masters’ affidavit, he stated that he had performed work on the same tank numerous times and even stated that he had previously observed the overflow condition during the other times he worked on top of the tank. Further, Masters noted that it was common knowledge that the tank would overflow. Similarly, Whitlock stated that the conditions on the day of Toby Gardner’s death were no different than a lot of the other bad, unkempt working conditions in the pulp mill section of the plant. And, he stated that prior to approaching the tank, Toby Gardner seemed to be in good mental and physical condition, and there was nothing out of the ordinary in his behavior. Based on these statements, we conclude that neither IP, nor its In employees, including Whitlock or Masters, knew that by directing Toby Gardner to the top of the tank under these conditions, an injury would be inevitable.
This holding is also consistent with two recent cases in which the Louisiana Supreme Court addressed the intentional act exception under the Workers’ Compensation Act—Miller v. Saltier Supply Co., Inc., 2013-2558 (La.01/27/14), 132 So.3d 386 and Danos v. Boh Bros. Const. Co., L.L.C., 2013-2605 (La.02/07/14), 132 So.3d 958 . In both cases, the court noted the importance of prior incidents when deter *77 mining whether the defendant knew an injury was substantially certain to follow.
Here, as in Miller and Danos, there were no prior incidents which would lead a reasonable person to believe that it would be inevitable or substantially certain that an injury would follow. The record reflects that four of Toby Gardner’s coworkers all worked on top of the tank on the morning the accident occurred. Additionally, Masters testified that he worked on top of the very same tank at least once a month for a year, and sometimes up to six times in one month. According to Masters, in all of these instances, including the day of Toby Gardner’s death, no accidents or injuries were reported.
Based upon this record and following well-settled jurisprudence, we conclude that Gardner has failed to present factual support to establish that she would be able to satisfy her evidentiary burden of proving that IP, or any of its employees, knew that Toby Gardner’s injuries were inevitable or | ^substantially certain to follow. Accordingly, there is no genuine issue of material fact, and the trial court properly granted IP’s, Craft’s, and Zachry’s motions for summary judgment.

KBR

As to KBR, Gardner contends that the trial court erred in holding that the passage of the La. R.S. 9:2772 peremption period renders KBR immune from accountability for maintenance responsibilities assumed by KBR when it undertook an obligation to maintain all facilities necessary for the ample protection of the public and the workers employed about the site.
On appeal, Gardner concedes that any claim against KBR for a design defect is perempted under La. R.S. 9:2772.[3] Therefore, we must determine whether KBR undertook an obligation to redesign or reconstruct the tank and access opening cover so that it complies with OSHA standards and regulations.
In support of her assertion that KBR undertook such a duty, Gardner relies on Article 15 of the maintenance contract described above, which provides:
CONTRACTOR (KBR) shall provide and maintain all facilities necessary for the ample protection of the public and the workers employed about the site, as may be required. CONTRACTOR agrees that in the performance of the Work, CONTRACTOR will comply with all applicable standards with respect to the employees of the CONTRACTOR and all subcontractors under the Occupational Safety and Health Act and regulations issued thereunder, and under any state laws.
11sBased on this language, Gardner argues that KBR was required to secure the floor opening cover, or alternatively, the cover should have been surrounded by handrails. We disagree.
Pursuant to the contract, KBR agreed to follow all safety rules and regulations in accordance with state law and OSHA. Contrary to Gardner’s argument, the maintenance contract does not impose an obligation to redesign or reconstruct the tank so that it complies with OSHA regulations. As the trial court noted, even if KBR assumed such duty, Gardner’s claim for negligence is indistinguishable from a design defect claim because the construction of the tank with or without guardrails, or the construction of the access opening with or without hinges, directly relates to the design of the tank. *78 And, any claim relating to a design defect is perempted under La. R.S. 9:2772 as more than five years has elapsed since KBR turned the tank over to IP. Accordingly, there is no genuine issue of material fact, and the trial court properly granted summary judgment in favor of KBR.
Conclusion
Based on the foregoing, we conclude that the trial court properly granted summary judgment in favor of International Paper Co., Mike Craft, Zachry Industrial, Inc., Kellogg, Brown & Root, L.L.C., and Kellogg, Brown & Root Services, Inc. All costs of this appeal are assessed to Melanie Gardner.
AFFIRMED.

. Zachry was the contractor for maintenance on the premises of this particular mill at the time of Toby Gardner's death.

. This court considered an initial appeal by the plaintiff in Gardner v. Craft, 47,360 (La.App.2d Cir.09/26/12), 105 So.3d 135, writ denied, 2012-2645 (La.01/25/13), 105 So.3d 723. There, Gardner brought suit against Stebbins Engineering and Manufacturing Company alleging that it failed to remedy or warn IP as to the overflow problem despite becoming aware of it. In affirming summary judgment, this Court found that Stebbins had not assumed a duty to provide safety advice or fix the problem, even though it became aware of the problem over time.

. Louisiana R.S. 9:2772 provides a five-year peremptive period for filing a tort claim arising from the design, construction of movables, immovables, or improvements thereon.