Judgment rendered March 30, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,252-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

SARAH EILTS                                    Plaintiff-Appellant

Versus

TWENTIETH CENTURY FOX                          Defendants-Appellees
FILM CORPORATION, BREAKOUT
KINGS PRODUCTION, LLC, AND
AARON NELSON

* * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 78,009

Honorable Amy Burford McCartney, Judge

* * * * *

MANNO LAW FIRM, LLC                    Counsel for Appellant,
By: Mark Kenneth Manno                 Sarah Eilts

McCRANIE, SISTRUNK, ANZELMO,           Counsel for Appellees,
HARDY, McDANIEL & WELCH, LLC           Twentieth Century Fox
By: Heather N. Shockley                Film Corporation and
                                       Breakout Kings
                                       Production, LLC

* * * * *

Before THOMPSON, ROBINSON, and O'CALLAGHAN (*Pro Tempore*), JJ.

**O'CALLAGHAN (*Pro Tempore*), J.**

In this tort suit, the plaintiff, Sarah Eilts, appeals from a trial court ruling which granted summary judgment in favor of the defendants, Breakout Kings Productions, LLC ("Breakout Kings"), and Twentieth Century Fox Film Corporation ("TCFFC"). Breakout Kings and TCFFC answered the appeal, contending that the trial court erred in denying their motion to strike the plaintiff's untimely opposition memorandum. We reverse the trial court's denial of the motion to strike and affirm summary judgment in favor of the defendants.

## FACTS AND PROCEDURAL HISTORY

Eilts worked on the television show "Salem" in several capacities, including as a "stand-in" and a stunt performer.[1] On December 22, 2016, she filed a petition for damages in which she claimed that she was injured by Aaron Nelson when he threw her to the ground during the filming of a scene on January 29, 2016. She alleged that his conduct was an intentional tort and named him as a defendant, along with Breakout Kings and TCFFC, which she asserted produced or created "Salem." As a result of Nelson's actions, she claimed to have sustained injuries to her right upper extremity, right shoulder, and cervical spine. She further alleged that, at the time of the incident, Nelson was in the course and scope of his employment with Breakout Kings and/or TCFFC or, alternatively, he was an officer, agent, and/or assign of them, thus making them vicariously liable for his actions.

---

[1] "Salem" was a Gothic horror television series which filmed in northwest Louisiana from about 2014 to 2016 with a cast that included Shane West, Janet Montgomery, Tamzin Merchant, Xander Berkley, and Lucy Lawless. The incident at issue occurred at a location near the village of Grand Cane in DeSoto Parish.

On January 19, 2017, Breakout Kings and TCFFC answered the petition, generally denying the allegations.[2] They specifically pled tort immunity and the exclusive remedy provisions of the Louisiana Workers' Compensation Act as a complete and absolute bar to the recovery sought by Eilts. In the alternative, they contended that, if Nelson's actions were intentional, they were outside the course and scope of his employment. They also pled such other defenses as comparative fault and assumption of the risk and requested a jury trial.

On February 1, 2021, Breakout Kings and TCFFC filed a motion for summary judgment in which they asserted that Breakout Kings was entitled to tort immunity under the Louisiana Workers' Compensation Act due to its status as Eilts' employer at the time of the incident. As to the intentional act exception in workers' compensation, they argued that it required proof that Breakout Kings or its employee who committed the intentional act (1) consciously desired the physical result of his act or (2) knew that the result was substantially certain to follow from his conduct. They also contended that TCFFC did not employ Eilts or have a role in the production of "Salem"; its only link was issuing royalty payments to actors like Eilts for subsequent airings of the show that generated revenue. In support of their motion, they submitted the following documents: the affidavit of Judd Rea, a producer for Breakout Kings; the petition for damages; Eilts' deposition; and the 1442 corporate representative deposition by Craig Davidson, a Disney executive.

---

[2] Nelson has never been served and has not made any appearance in the lawsuit.

In his affidavit, Rea stated that on January 29, 2016, Eilts was employed by Breakout Kings as a stunt performer/actor in "Salem" and she was allegedly injured in the course and scope of her employment while filming a scene. He stated that on January 20, 2016, she signed an employment contract with Breakout Kings' parent company to work as a "Stunt Refugee Woman" in the first episode of the third season of "Salem."[3] As a result of her alleged injuries, she made a workers' compensation claim with Breakout Kings' workers' compensation insurer and received medical benefits and indemnity payments. According to Rea's affidavit, the insurer was still paying indemnity payments to Eilts. He stated that Breakout Kings did not intend or desire for Eilts to be injured while working on "Salem." Rea further stated that there was no corporate relationship between TCFFC and Breakout Kings at the time of the incident, except 21st Century Fox America, Inc., ultimately owned both entities, and that TCFFC had no role in the production of "Salem." While the initial workers' compensation documentation erroneously identified Twentieth Century Fox TV as Eilts' employer, he stated that her claim had since been redesignated internally.

In her deposition, Eilts indicated that she worked on "Salem" for two and a half to three years. She was "uncertain" as to whether she had signed a contract to work on "Salem." She had worked in several positions, including a speaking actor, a body double, a stand-in, and a stunt performer. She admitted making a workers' compensation claim for the incident in question. She was "uncertain" as to whether they had paid her medical expenses but conceded that she was receiving about $500 in income per

_____

[3] However, a copy of this contract shown to Davidson during his deposition was dated "1/29/16."

3

week.  As to the actual incident, she stated that she was initially standing in for an actor and then she was paid as a stunt performer.  In what was apparently a rape scene, she was thrown to the ground violently enough to separate her shoulder.  She asserted that she was upgraded to a stunt position after she got "beat up."  She finally admitted that she was told, in relation to the scene being filmed, that there was going to be a raid on the town and she would be "crawling away."  She further admitted that she was thrown down more than once while filming the scene.  She was "not certain" when she got "badly injured."  She stated that she went to an urgent care facility the next day for treatment.

When questioned about evidence pertaining to the defendants' intentions, Eilts testified as follows:

Q:  Do you believe that Aaron Nelson intended to hurt you?
A:  I can't say.
Q:  You don't think he did?
A:  I--I'm un--I--I don't know.
Q:  Okay. Do you have any evidence that he intended to hurt you?
A:  Not-- not that I can think of, other than the fact that I'm hurt.
. . .
Q:  Do you have any evidence that Twentieth Century Fox intended for you to be injured?
A:  Not to my knowledge.
Q.  Do you have any evidence that Breakout Kings intended for you to be (sic) sustain injury?
A:  Not to my knowledge.

In his deposition, Davidson testified that he was currently the HR business partner overseeing the Disney TV studios and that in 2016 he had been the director of HR operations out of New York for the Walt Disney Company.  He stated that Breakout Kings was a subsidiary of Fox 21, which was acquired by Disney in 2019.  According to Davidson's information, both Eilts and Nelson were general extras and Eilts was on the call sheet as a

4

"refugee stuntwoman." Eilts was employed by Breakout Kings. Davidson stated he was unable to locate any contact information for Nelson, who was apparently provided to "Salem" by an entity called Entertainment Partners, a third-party staffing agency that supplied mainly general extras to productions. While they could not find any pay stubs for Nelson to confirm his employment with Entertainment Partners, a "Salem – Season 3" detailed earnings report for Nelson showed he was paid general extra wages on the date in question. According to Davidson, a detailed earnings report just showed what an individual was paid and for which production the show was being produced; it was the only document they were able to locate pertaining to Nelson.

Davidson was shown numerous documents by plaintiff's counsel. He agreed that one document from Legacy Casting listed Eilts as "PD REFUGEE WOMAN" and Nelson as "PD BRAVE." Both a handwritten cast sheet and a typed "approved" production report for January 29, 2016, showed Eilts as "STUNT REFUGEE WOMAN" but did not list Nelson. Other documents included a pay stub for Eilts on 1-29-16 and a 2016 W-2 for Eilts from Breakout Kings. There were copies of an employer report of injury/illness, a Breakout Kings incident report, a supervisor investigation report, and an employer's report of occupational injury or illness; however, Davidson had no knowledge as to who filled out these documents.[4]

The motion for summary judgment was set for April 1, 2021. On March 26, 2021, Eilts filed a memorandum in opposition to the motion for

---

[4] The contents of these reports were very similar, and they utilized some of the same descriptions. They identified Eilts as a "stunt performer" whose right shoulder was bruised while "[p]erforming stunt where she was thrown to the ground and choked." They also stated that the injury "[o]ccurred while continuously performing stunt" or that the incident happened while "[p]erforming stunt repeatedly."

summary judgment. On March 29, 2021, Breakout Kings and TCFFC filed a reply memorandum to the opposition and a motion to strike the opposition. They contended that Eilts failed to comply with the requirement of La. C.C.P. art. 966(B) that an opposition be filed and served not less than 15 days prior to the hearing on the motion for summary judgment.

At the hearing on April 1, 2021, counsel for Eilts conceded that the opposition was not filed timely and that there was no reason for its tardiness. The trial court took that issue under advisement and allowed arguments to proceed. Counsel for the defendants argued that TCFFC should be dismissed because it had no role in the production of the show or any oversight over the filmed scenes, and it was not Eilts' employer. As to Breakout Kings, counsel for the defendants argued that it was Eilts' employer and that her exclusive remedy against it was in workers' compensation. As to the intentional act exclusion, the defendants pointed to Eilts' deposition testimony that she had no evidence that Nelson intended to hurt her other than the fact that she was hurt. Counsel for Eilts admitted, while not stipulating, that it had no argument against granting summary judgment in favor of TCFFC. As to Breakout Kings, Eilts' counsel maintained that it was liable for a battery committed upon Eilts by a coworker and that summary judgment was not appropriate because the intent of the tortfeasor was an issue. On rebuttal, counsel for the defendants argued that Eilts could not prove the required showing of intent. Also, the evidence indicated that the scene was filmed multiple times and that, instead of walking away after the first time, she consented to the alleged battery.

At the conclusion of the hearing, the trial court ruled that it did not believe that it was required to strike the late opposition and allowed it.

However, the trial court concluded that summary judgment was appropriate as to both defendants. As to TCFFC, no opposition had been provided. As to Breakout Kings, the trial court granted the motion because the injury was not substantially certain to occur. Judgment in conformity with the trial court's rulings was signed on May 6, 2021, dismissing the matter in its entirety with prejudice.

Eilts appealed. However, in her brief to this court, she stated that she was not appealing the trial court's dismissal of TCFFC.

## ANSWER TO THE APPEAL

The defendants answered the appeal, challenging the trial court's failure to strike Eilts' late opposition to the motion for summary judgment. In their brief, the defendants mentioned the then-pending case of *Auricchio v. Harriston*, 20-01167 (La. 3/16/21), 312 So. 3d 589, wherein the Louisiana Supreme Court granted a writ to resolve a split between the courts of appeal relative to the interpretation of La. C.C.P. art. 966(B)(2). After the filing of the parties' briefs, the supreme court rendered *Auricchio v. Harriston,* 20-01167 (La. 12/10/21), 332 So. 3d 660, in which it ruled that, in the absence of consent by the parties, a trial court has no discretion to extend the 15-day deadline for filing an opposition to summary judgment. Accordingly, we reverse the trial court's denial of the defendants' motion to strike the untimely opposition, and we will conduct our *de novo* review of the motion for summary judgment without the late-filed opposition.[5]

---

[5] Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Shields v. McInnis Bros. Constr., Inc.*, 53,581 (La. App. 2 Cir. 3/3/21), 314 So. 3d 1079.

7

## INTENTIONAL ACT EXCLUSION

As mentioned above, Eilts does not contest the trial court's dismissal of TCFFC as a defendant. As to Breakout Kings, she argues that the trial court erred in finding that the tort committed by Nelson was not intentional. While admitting in her brief that she voluntarily appeared as a stunt performer on the day of the incident, she insists that she did not consent to a battery and that she was unaware that she was "going to be injured or thrown aggressively."

The defendants assert that, as an employee of Breakout Kings, Eilts' exclusive remedy was in workers' compensation. They maintain that, after Breakout Kings demonstrated that Eilts was allegedly injured in the course and scope of her employment, the burden shifted to her to prove the applicability of the intentional act exception. Under the jurisprudence, in order to qualify under that exception, it was Ms. Eilts' burden to demonstrate that Nelson either consciously desired the physical result of his conduct or knew that the result was substantially certain to follow from his conduct. Because she failed to show that Nelson intended to injure her or that her alleged injuries were substantially certain to occur, she failed to carry her burden of proof. After conducting our *de novo* review, we agree with the defendants.

### *Law*

An employee injured in the course of his employment is generally not allowed to recover tort damages against his employer. *Gardner v. Craft*, 48,861 (La. App. 2 Cir. 3/5/14), 137 So. 3d 69, *writ denied*, 14-0711 (La. 5/16/14), 139 So. 3d 1029; *Berry v. Valley Gin, Inc.*, 44,433 (La. App. 2 Cir. 7/1/09), 16 So. 3d 494. Rather, the employee's exclusive remedy for

workplace injuries is workers' compensation, unless the employee's injuries are the result of an intentional act. La. R.S. 23:1032(A) and (B). The intentional act exception to workers' compensation is narrowly construed. *Reeves v. Structural Pres. Sys.*, 98-1795 (La. 3/12/99), 731 So. 2d 208; *Gardner v. Craft*, *supra*.

Establishing that a workplace injury resulted from an intentional act requires proof that the person who acts either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening because of his conduct, or (2) knew that the result was substantially certain to follow from his conduct, whatever his desire may have been as to that result. *Carrier v. Grey Wolf Drilling Co.*, 00-1335 (La. 1/17/01), 776 So. 2d 439; *Reeves v. Structural Pres. Sys.*, *supra*; *Bazley v. Tortorich*, 397 So. 2d 475 (La. 1981); *Gardner v. Craft*, *supra*. "Substantially certain to follow" requires more than a reasonable probability that an injury will occur and "certain" has been defined to mean "inevitable," or "incapable of failing." *Stanley v. Airgas-Sw., Inc.*, 15-0274 (La. 4/24/15), 171 So. 3d 915; *Reeves v. Structural Pres. Sys.*, *supra*; *Simoneaux v. Excel Group, L.L.C.*, 06-1050 (La. 9/1/06), 936 So. 2d 1246; *Crockett v. Therral Story Well Serv., Inc.*, 45,716 (La. App. 2 Cir. 1/5/11), 57 So. 3d 355, *writ not cons.*, 11-0263 (La. 3/25/11), 61 So. 3d 650.

A motion for summary judgment is the proper procedural tool to penetrate a plaintiff's general allegation that an injury resulted from an intentional tort. *Gardner v. Craft*, *supra*. The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all

9

essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966 (D)(1). See *Carrier v. Grey Wolf Drilling Co.*, *supra*.

### *Discussion*

Eilts claims that, if Nelson committed a battery against her, Breakout Kings is liable for the consequences of that intentional act, regardless of the ultimate intent of Nelson or Breakout Kings. In support of her argument, Eilts relies upon two Louisiana Supreme Court cases, *Caudle v. Betts*, 512 So. 2d 389 (La. 1987), and *Cole v. State Dep't of Pub. Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134. In *Caudle*, *supra*, the supreme court considered the intentional act exception in the context of the intentional tort of battery. It concluded that an electrical shock from an electric automobile condenser administered by the company CEO to an employee at a Christmas party as a "joke" (which caused nerve damage) was an intentional tort outside the remedy of workers' compensation. The supreme court stated that, when an employee seeks to recover from his employer for an intentional tort, a court must apply the legal precepts of general tort law related to the particular intentional tort alleged in order to determine whether he has proved his cause of action and damages recoverable thereunder. It defined battery as "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact." It found it was undisputed that, when the CEO shocked Caudle, he intended the

10

contact to be offensive and at least slightly painful or harmful. The fact that he did so as a practical joke and did not intend to inflict actual damage did not render him immune from liability. The supreme court stated that "[t]he intention need not be malicious nor need it be an intention to inflict actual damage. It is sufficient if the actor intends to inflict either a harmful or offensive contact without the other's consent."

In the *Cole* case, a correctional officer was injured when struck full force with unpadded batons while participating in a simulated prison riot which deteriorated into a "free-for-all." The supreme court allowed Cole, who relied upon the *Caudle* case, to recover damages for an intentional tort, holding that the force he received was unnecessary to accomplish the goal of the training exercise. In so ruling, the supreme court found that striking someone at full force with an unpadded baton was "a harmful or offensive contact intending that person to suffer such a contact." While discussing the intentional act exception, the supreme court acknowledged the *Bazley* two-prong definition of intent ("consciously desires the physical result of his act" or "knows that the result is substantially certain to follow from his conduct") and the narrow construction afforded to that exception. As to the argument that Cole consented to the battery, the supreme court held that a full force altercation was not anticipated and, to the extent that he initially consented to harmful touching during the training exercise, his consent was vitiated by the unnecessary and unanticipated force used.

In their brief, the defendants cite several appellate court cases in which employees sued for damages for workplace batteries. Like Eilts, the plaintiffs in these cases relied upon *Caudle*, *supra*, and in each case it was found to be factually distinguishable. In *Guarino v. Kaiser Aluminum &*

11

*Chem.*, 97-926 (La. App. 5 Cir. 5/13/98), 712 So. 2d 989, *writ denied*, 98-1893 (La. 10/30/98), 727 So. 2d 1165, *cert. denied*, 526 U.S. 1039, 119 S. Ct. 1334, 143 L. Ed. 2d 499 (1999), a foreman grabbed a tool from an employee's hand, causing injury to employee's rotator cuff.  The appellate court vacated a jury verdict in the employee's favor, finding that neither prong of the *Bazley* intentional tort analysis was met.  In *Chabert v. Mothe Life Ins. Co.*, 04-590 (La. App. 5 Cir. 11/30/04), 890 So. 2d 621, an employee was knocked down when her coworker either bumped or pushed her.  The appellate court affirmed summary judgment in favor of the employer and coworker because it was unable to disagree with the trial court's conclusion that, even assuming the "bump" was intentional, there was no evidence that the coworker was substantially certain Chabert would fall or be injured as a result of his conduct.  In *Young v. Doe*, 11-49 (La. App. 5 Cir. 5/24/11), 67 So. 3d 632, a waitress hit a restaurant cook in the head with a plate.  The appellate court affirmed summary judgment in favor of the defendants after considering the deposition testimony of the waitress that she did not intend to hurt Young when she touched him with the plate but expected him to laugh, along with Young's deposition testimony that he did not think the waitress intended to hurt him.[6]

In the instant case, Breakout Kings, as the movant, bore the initial burden on summary judgment.  However, since it would not bear the burden

---

[6] See also *Chevis v. Rivera*, 2021-0124 (La. App. 1 Cir. 9/24/21), 329 So. 3d 831, *writ denied*, 21-01546 (La. 12/21/21), 330 So. 3d 317, in which the appellate court reversed a partial summary judgment in favor of a worker due to a genuine issue of material fact as to whether a supervisor's action in touching a board to the worker's hardhat constituted an intentional act.  The worker cited the *Cole* and *Caudle* cases; the appellate court found the factual scenarios in both of them to be clearly distinguishable from the case before it.

of proof at trial on the issue before the court, its burden on summary judgment was only to show an absence of factual support for one of more essential elements of Eilts' claim. Breakout Kings established that it employed Eilts on the day of the incident and that she was injured on the job. As an employee of Breakout Kings, Eilts was then required to prove that she fell under the intentional act exception to the workers' compensation act. She asserted that Nelson committed a battery upon her, i.e., he intended to inflict either a harmful or offensive contact upon her without her consent. According to the jurisprudence, she had to demonstrate that Breakout Kings or Nelson either consciously desired the physical result of Nelson's act or knew that the result was substantially certain to follow from Nelson's conduct.

By her own admission, Eilts voluntarily appeared as a stunt performer on the day of the incident, repeatedly filmed a scene in which she and Nelson enacted a physical assault, and failed to voice any concern for her safety to her employer during the repeated performances of the stunt. Eilts' frequently vague deposition testimony is woefully deficient in providing information supporting her case. As recounted *supra*, when asked during her deposition if she believed that Nelson intended to hurt her, Eilts responded, "I can't say. . . I don't know." When asked if she had any evidence he intended to hurt her, she said, "Not – not that I can think of, other than the fact that I'm hurt." When asked if she had evidence that Breakout Kings intended for her to be injured, she replied, "Not to my knowledge."

Based upon this record, we conclude that Eilts has failed to present any factual support to establish that she would be able to satisfy her

13

evidentiary burden at trial that Nelson or Breakout Kings intended to inflict either a harmful or offensive contact upon her without her consent. She has not demonstrated that Breakout Kings or Nelson either consciously desired the physical result of Nelson's act or knew that the result was substantially certain to follow from Nelson's conduct. Accordingly, there is no genuine issue of material fact, and summary judgment is proper in the instant case.

## CONCLUSION

We reverse the trial court's denial of the defendants' motion to strike the late opposition. The trial court judgment granting summary judgment in favor of Breakout Kings and TCFFC is affirmed. Costs of this appeal are assessed against the appellant, Sarah Eilts.

**DENIAL OF MOTION TO STRIKE REVERSED; SUMMARY JUDGMENT AFFIRMED.**